**UNITED STATES of America, Appellee,**

v.

**George Martin GOLAY, Appellant.**

**No. 74–1028.**

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1974.

Decided Aug. 27, 1974.

James B. Herd, St. Louis, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before JOHNSEN and VAN OOSTERHOUT, Senior Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The case before us arises out of an extortion. On April 30, 1973, the home of a St. Louis banker was broken into, his wife bound and gagged, and photographs of her, in her trussed-up condition, sent to her husband with a demand for $50,000. The money was paid. Later, in Casper, Wyoming, acting under a search warrant for stolen diamonds, the police discovered in the room of defendant George Martin Golay a large sum of money, still in St. Louis bank wrappers, a gun, a Polaroid camera, and other articles. Golay was charged with being the perpetrator of the extortion scheme and was convicted by a jury of violations of 18 U.S.C. § 1951 (interference with commerce by threats or violence) and 18 U.S.C. § 2113(b) and (d) (bank robbery). This appeal challenges the denial of a motion to suppress and the use of defendant's oral and written confessions. We affirm.

Subsequent to the extortion, in Casper, Wyoming, one Renee Laird reported to the police that her room at the Townsend Hotel had been broken into and that diamonds had been taken therefrom. It also appeared (from the affidavit for the search warrant here involved) that one Jim Kerns, also a resident of the Townsend Hotel, had stated to police that on August 4, at or about midnight, he had observed defendant Golay enter the Laird apartment through a window. When Golay left he told Kerns that he had just picked up some diamonds, which they then viewed in Golay's room. A "big diamond" was given to Kerns at this time and was, in fact, worn by him while talking to affiant, Officer Dovala.

A warrant was obtained to search for approximately eight diamonds set in white platinum gold. They were never found. But in the course of the search the officers found and seized an attache case containing nine thousand dollars in cash arranged in bundles with wrappers marked with the stamp of the First National Bank of St. Louis, a pistol, and a

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

quantity of suspected marijuana.[1] With the exception of the marijuana, all these items were admitted at defendant's trial.

It is urged to us that "[t]he warrant made no mention of cash, weapons or any of the other items seized during the search of appellant's room," and that under the holding in Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L. Ed. 231 (1927) the seizures were invalid since, under *Marron,* it is argued, "Nothing is left to the discretion of the officer executing the warrant." It is pointed out, moreover, that none of the articles was contraband and that none was known at the time of the seizure to be connected with any offense.

■■■ The facts before us take us once again into the gray areas of search and seizure. First of all, the mere fact that the items seized were not described in the warrant does not justify their suppression.[2] This Court has repeatedly held that an item discovered in a search authorized by a warrant but not described therein may be seized if it is evidence "of another crime being committed in [the searching officer's] presence," [3] or is "reasonably related to the crime for which the warrant issued." [4]

The failure to name the seized articles in the warrant does, however, cast upon the Government the burden to show that the warrantless seizure was justified by a "specifically established and well-delineated" exception to the Fourth Amendment's general requirement of a warrant.[5] One such exception, the "plain view" doctrine, is clearly applicable here. There is no suggestion that the intrusion into the briefcase was beyond the scope of the search for diamonds authorized by the warrant. The seized articles thus fell into "plain view of an officer who [had] a right to be in a position to have that view." Harris v. United States, 390 U.S. 234, 236, 88 S. Ct. 992, 993, 19 L.Ed.2d 1067 (1968). As stated by Mr. Justice Stewart, writing for a plurality in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971):

An example of the applicability of the "plain view" doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character. Cf. Go-Bart Importing Co. v. United States, 282 U.S. 344, 358, 51 S.Ct. 153, 158, 75 L.Ed. 374; United States v. Lefkowitz, 285 U.S. 452, 465, 52 S.Ct. 420, 423, 76 L.Ed. 877; Steele v. United States, 267 U.S. 498, 45 S.Ct. 414,

---

1. Pursuant to a written consent to search, signed by defendant Golay and witnessed by Special Agents of the F.B.I. Comeaux and Hooper, defendant's room was again searched on August 21, 1973, at which time a Polaroid camera and articles of a personal nature were removed.

2. We do not read Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927) as dictating otherwise. There, items were seized which were not described in the warrant. The Court rejected the contention that the seizure was justified "as an incident to the execution of the search warrant" because:

The requirement [of the Fourth Amendment] that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing *under a warrant* describing another. [Emphasis supplied.]

275 U.S. at 194, 196, 48 S.Ct. at 75, 76. But the Court went on to hold that the circumstances presented sufficient justification for a warrantless search, and the seizure was upheld as incident to a lawful arrest. 275 U.S. at 198–199, 48 S.Ct. 74.

3. United States v. Carwell, 491 F.2d 1334, 1336 (8th Cir. 1974) (gun in possession of known felon); Aron v. United States, 382 F.2d 965 (8th Cir. 1967) (postage stamps known to have been stolen).

4. Taylor v. Minnesota, 466 F.2d 1119, 1121 (8th Cir. 1972), cert. denied, 410 U.S. 956, 93 S.Ct. 1425, 35 L.Ed.2d 689 (1973); *see* United States v. Smith, 462 F.2d 456 (8th Cir. 1972); United States v. Bridges, 419 F.2d 963 (8th Cir. 1969).

5. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

69 L.Ed. 757; Stanley v. Georgia, 394 U.S. 557, 571, 89 S.Ct. 1243, 1251, 22 L.Ed.2d 542 (Stewart, J., concurring in result). * * *

What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused— and permits the warrantless seizure. * * *

* * * * * *

* * * In each case, this initial intrusion is justified by a warrant or by an exception * * *. And, given the initial intrusion, the seizure of an object in plain view * * * does not convert the search into a general or exploratory one. As against the minor peril to Fourth Amendment protections, there is a major gain in effective law enforcement. Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it.

403 U.S. at 465–468, 91 S.Ct. at 2037–2039.[6]

The defendant urges, however, that the seizure was illegal because the items seized were not contraband or evidence of a crime committed in the officers' presence. It is true that the record before us does not so establish. But defendant is in error in suggesting that the legality of seizure under the plain view exception is so limited. The defendant had been identified by one sharing in the proceeds of the burglary as the perpetrator thereof. The police had been informed of the property stolen. The search was authorized after judicial consideration. In the execution thereof large sums of money still in the bank wrappers and a gun were discovered. It is conceivable that the monies were the proceeds of honest toil and the gun employed for target practice only. But the circumstances presented, as we put it in United States v. Jones, 452 F.2d 884, 888 (8th Cir. 1971), would have "reasonably alerted the police officers to the fact that [the defendant] may have been involved in some other illegal activity," the fruits of which were before them. There was thus probable cause to establish that "nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior."[7]

The matter was succinctly phrased by Chief Judge Murrah, writing for the Tenth Circuit in Seymour v. United States, 369 F.2d 825, 826–827 (10th Cir. 1966) in the following terms:

We know, of course, that the precise language of the Fourth Amendment requiring the search warrant to particularly describe "things to be seized"

**6.** *Coolidge* did not involve the seizure of items not described in a search warrant. However, the lower courts have found Mr. Justice Stewart's dictum persuasive on this point. United States v. Maude, 156 U.S.App. D.C. 378, 481 F.2d 1062 (1973) ; United States v. Henkel, 451 F.2d 777 (3rd Cir. 1971), cert. denied, 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 104 (1972). *Compare* United States v. Pacelli, 470 F.2d 67 (2nd Cir. 1972), cert. denied, 410 U.S. 983, 93 S.Ct. 1501, 36 L.Ed.2d 178 (1973), *with* United States v. Dzialak, 441 F.2d 212 (2nd Cir.),

cert. denied, 404 U.S. 883, 92 S.Ct. 218, 30 L.Ed.2d 165 (1971) *and* United States ex rel. Nickens v. LaVallee, 391 F.2d 123 (2nd Cir. 1968). For pre-*Coolidge* use of the plain view theory see Anglin v. Director, Patuxent Institution, 439 F.2d 1342 (4th Cir.), cert. denied, 404 U.S. 956, 92 S.Ct. 302, 30 L.Ed.2d 262 (1971), Seymour v. United States, 369 F.2d 825 (10th Cir. 1966), cert. denied, 386 U.S. 987, 87 S.Ct. 1297, 18 L.Ed.2d 239 (1967).

**7.** Warden v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967).

forbids "the seizure of one thing under a warrant describing another"— "nothing is to be left to the discretion of the officers executing the warrant." Marron v. United States, 275 U.S. 192 [48 S.Ct. 74, 72 L.Ed. 231]; Stanford v. State of Texas, 379 U.S. 476 [85 S.Ct. 506, 13 L.Ed.2d 431]; Harris v. United States, 10 Cir., 151 F.2d 837, 169 A.L.R. 1413, affmd. 331 U.S. 145 [67 S.Ct. 1098, 91 L.Ed. 1399]. The constitutional mandate is implemented in Rule 41(e), F.R.Crim. P. But, notwithstanding the specificity of the constitutional prohibition, the courts have apparently recognized a narrow exception dictated by the practicalities of a particular situation as where in the course of a lawful search pursuant to a lawful arrest or the execution of a valid search warrant the officer uncovers evidence of another crime. In these circumstances the officer is not required to close his eyes to the realities of the situation. He may sieze the fruits or the instruments of the crime or even that which is presumptively contraband.

Whether analyzed in terms of reasonableness or probable cause, the conclusion must be that the officers had a duty to seize and take into protective custody the articles so revealed. In this situation the seizure of the items in plain view intruded only upon defendant's possessory interest in the articles.[8] His protected privacy had already been justifiably invaded. What we weigh here is the need for seizure against the invasion which the seizure entails.[9] So weighed we find the seizure reasonable under the Fourth Amendment.

■ The defendant contends also that the affidavit upon which the warrant was issued was insufficient to support a finding of probable cause under the standards of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), in that it recites no "circumstances justifying the magistrate to conclude that the informant [Kerns] was credible."

In the affidavit before us the affiant, a police officer, swore that in investigating the burglary, he had interviewed one Jim Kerns who admitted that a diamond ring he wore during the interview was part of the loot. Kerns further told the officer that he had seen Golay commit the burglary and had obtained the ring from Golay in Golay's room where he saw a number of other diamond rings, and that he had agreed to sell the diamond he received and divide the proceeds with the defendant.

■ As we stated in United States v. Long, 449 F.2d 288 (8th Cir. 1971), cert. denied, Tocco v. United States, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 247 (1972):

In this case, the credibility and reliability of the informant was adequately established by the disclosure in the affidavit that the informant was an admitted participant in the crime and therefore an eyewitness to most of the acts constituting the crime as described in the affidavit.

449 F.2d at 293. See United States v. Harris, 403 U.S. 573, 583–584, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (Burger, C. J., plurality opinion); McCreary v. Sigler, 406 F.2d 1264, 1269 (8th Cir.), cert. denied, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969). Here, although Kerns was not a participant in the alleged burglary, he claimed to be an eyewitness, and his statement constituted an admission against penal interest.

8. Coolidge v. New Hampshire, 403 U.S. 443, 515, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (White, J., concurring and dissenting); cf. Warden v. Hayden, 387 U.S. 294, 304–307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

9. See Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*See* United States v. Harris, *supra*; United States v. Marihart, 472 F.2d 809, 814 (8th Cir. 1972) (en banc). Upon the facts presented there was ample basis for the magistrate to determine that Kerns "was 'credible' or his information 'reliable'" under the test of *Aguilar, supra,* 378 U.S. at 114, 84 S.Ct. at 1514. Probable cause existed for the issuance of the warrant.[10]

█ The defendant's signed confession was admitted over his objection at trial. On appeal he argues that the circumstances of his interrogation bring the case within the proscription of Miranda v. Arizona, 384 U.S. 436, 473–474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that once a suspect in custody "states that he wants an attorney, the interrogation must cease," and any statement adduced from subsequent questioning is inadmissible. It is also urged that the confession was induced by a false promise that he would receive favored treatment.

A pretrial hearing on defendant's motion to suppress was held at which both the defendant and his interrogators, two F.B.I. agents, testified. It was undisputed that before defendant was interrogated he was given the *Miranda* warnings and signed the F.B.I.'s standard waiver form. It was shown that defendant on separate occasions prior to the interrogation had consulted personally with two lawyers, Mr. Middaugh and Mr. McCarty, who both advised him to keep silent. Defendant also was permitted to place a call to attorney Middaugh shortly before he signed the written statement. The testimony conflicts, however, on the questions of whether, during his initial interrogation and before making any incriminating statements, the agents repeatedly refused defendant's requests to see a lawyer and whether they held out false promises of favored treatment to induce his confession.

The trial court resolved these conflicts in favor of the Government. Ruling from the bench, the court stated:

I think the evidence is clear that this man was fully advised of all his rights at every stage in this proceeding. He had every opportunity and did consult with two lawyers * * * one on three occasions and one on another occasion, and there's no evidence that there was any force or coercion of any kind, and the statements were freely and voluntarily given, and they are admissible.

We have examined the record with care and find the evidence fully supports this conclusion. There was no error in admitting defendant's confession.

We have fully considered defendant's remaining claims and find that no prejudicial error was committed with respect to the admission of evidence or the jury instructions. The judgment is affirmed.

---

10. We reject defendant's further contention that the information in the affidavit was too stale to support a finding of probable cause that the diamonds were in Golay's hotel room. The warrant was issued August 20 on information that the diamonds were seen in Golay's room August 4. It does not appear that this issue was raised in the court below. In any event, under all the circumstances, Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932), we do not think the delay vitiates the presence of probable cause. *See* United States v. Harris, 403 U.S. 573, 579 n. *, 589, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).