UNITED STATES of America,
Appellee,

v.

Henry Albert STEEVES, Appellant.

No. 75–1253.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 9, 1975.

Decided Nov. 6, 1975.

John Clifford, Minneapolis, Minn., for appellant.

Thorwald H. Anderson, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and VAN PELT, Senior District Judge.*

HENLEY, Circuit Judge.

Following a jury trial, Henry Albert Steeves, defendant below, was found guilty in the United States District Court for the District of Minnesota of the unlawful "receipt and possession" of

* The Honorable Robert Van Pelt, United States Senior District Judge for the District of Nebraska, sitting by designation.

two rifles in violation of 18 U.S.C. App. § 1202(a)(1). Defendant was sentenced to imprisonment for two years on Count 1 of the indictment and to imprisonment for one year on Count 2 with the sentences to be served consecutively. He appeals.

Insofar as here pertinent, the statute under which the defendant was charged provides that any person who has been convicted of a felony in any state or federal court and who "receives, possesses, or transports in [interstate] commerce or affecting [interstate] commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

Each count of the indictment charged an offense allegedly committed in the City of Fridley, Minnesota on or about September 17, 1974. The first count charged that on the date just mentioned the defendant, having been convicted of a felony, received and possessed in commerce or affecting commerce a certain rifle of Belgian manufacture. The second count was identical to the first except that it described a Springfield 30.06 caliber rifle.

Both rifles were seized in the defendant's home on September 17, 1974 by FBI agents while executing a search warrant that had been issued by a United States Magistrate on that day in connection with an investigation of the robbery of a Minnesota bank that had been committed on June 22, 1974, nearly three months before the warrant was issued. The rifles described in the indictment were not mentioned in the search warrant, and the agents found none of the items of personal property that were set forth in the warrant.

Prior to the trial of the case the defendant filed a motion to suppress use of the rifles as evidence on the ground that the affidavit filed with the Magistrate did not justify a finding of probable cause and on the further ground that the affidavit misrepresented a material fact. After hearing, the district court denied the motion.

In the course of the trial the defendant contended that he was guilty of one offense at most, and that the two counts of the indictment should be merged. The district court rejected that contention.

Defendant argues several points for reversal. We will discuss those points, and will also discuss another point not raised either here or in the district court but which we deem to be dispositive of defendant's conviction on Count 2.

■ We take up first the contention that the trial court erred in permitting the jury to learn that the defendant had been convicted of a felony since counsel had stipulated as to that fact. We find the contention to be without merit. It was incumbent on the government to establish by stipulation or evidence that the defendant had been convicted of a felony, and it was incumbent on the district court to instruct the jury as to the essential elements of the offenses charged, including the felony element. Apparently, at some stage of the taking of testimony or prior to the taking of it the jury was told that counsel had stipulated that defendant had a felony record; and the transcript reflects that in the course of his instructions to the jury the trial judge stated without any comment, elaboration or emphasis that a prior felony conviction was an essential element of the offense charged in the respective counts, that the parties had stipulated on the subject, and that the jury might consider that the element in question had been established.

■ A contention similar to that of the defendant was considered and rejected by this court in *United States v. Smith,* 520 F.2d 544 (8th Cir. 1975). We have carefully considered the trial transcript in this case and are satisfied that the brief and passing references to defendant's prior conviction did not substantially prejudice him, and that they did not constitute error. *United States v. Cochran,* 475 F.2d 1080 (8th Cir.), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38

L.Ed.2d 68 (1973), and *Courtney v. Sarver,* 440 F.2d 1197 (8th Cir. 1971), cited by defendant, are clearly not in point.

The defendant contends that the district court erred in overruling his motion to suppress evidence in which motion the defendant attacked the validity of the search warrant issued by the federal Magistrate eighty-seven days after the bank robbery. The affidavit for the warrant was executed before federal Magistrate J. Earl Cudd on September 17, 1974 by Special Agent Robert D. Harvey of the Federal Bureau of Investigation. A copy of the affidavit is attached to the defendant's principal brief as an appendix. The affidavit recited essentially the following facts:

That the affiant on reliable information had reason to believe that there were concealed at the defendant's home certain items of property, namely, black trousers, a black waist-length jacket, a black ski mask, a .357 magnum handgun and silencer, a money bag from Summit State Bank of Bloomington, Minnesota, and proceeds of the robbery which took place on June 22, 1974.

That the bank was robbed on June 22 by a single gunman who was a white male armed with a magnum type pistol which had a silencer attached to it; that the robber was wearing a black ski mask, black trousers with narrow white stripes, gloves and a black waist-length jacket with a zipper front. That the robber menaced the loan officer of the bank, John Price, Jr., and a customer, Dean Thom, and directed the two men to go into the bank, and then ordered everyone to lie down; that the robber then obtained approximately $16,000 of the bank's money.

That the robber called on Wendy Tuttle, a teller in the bank, to put the money in a brown paper bag, which she did; that the money included heavy coin, and the brown paper bag broke so that the coin fell to the floor; the robber was then given a cloth money bag belonging to the bank, and the loot was put into that bag and carried away. The paper bag was recovered by agents of the Bureau.

That at some stage the robber discharged his weapon at a customer, and then reloaded the gun, dropping a cartridge to the floor or ground in the process; that the cartridge was recovered by the FBI and found to be of .357 magnum caliber.

That the robber escaped by taking Mr. Thom hostage and driving away in Thom's car which was abandoned some two blocks from the bank; that when the robber left the bank he removed his mask; he was observed by a bystander, Brooks, to be a white male; Miss Tuttle and Mr. Price described the robber as being from 5'8" to 5'10" tall, weighing 160 to 180 pounds and from 35 to 38 years of age; they observed that the robber wore no glasses.

That the FBI laboratory determined that "fingerprints" found on the brown paper bag were those of the defendant; that the defendant fitted the description supplied by the bank employees and does not wear glasses. That an acquaintance of the defendant had advised that the defendant has an affinity for wearing black. And that the affiant knew from personal observation that the defendant lived at the address mentioned in the affidavit.

The warrant was duly issued and authorized a search for the .357 caliber pistol, the ski mask, dark clothing, the bank's money bag and for any of the bank's money that might be found upon the premises to be searched. None of those items was found, and the defendant was never charged with the bank robbery. Instead, he was charged with violating § 1202(a)(1) on the basis of the two rifles that were found in his home.

It is contended here that there was such a lapse of time between the robbery and the date upon which Special Agent Harvey applied for and received the search warrant that as of the date of the warrant there was no probable cause to believe that any of the items in question

were still in the defendant's home if they had ever been there.

■ The particular contention raised here was not raised in terms before the district court, and that court made no specific finding on the question of whether the information set out in the affidavit had become stale. The position taken by the defendant in the district court was simply that the affidavit was insufficient substantively to justify a finding of probable cause to believe that the defendant had robbed the bank or that the items mentioned in the warrant were or had ever been in his home. The district court rejected that contention and the contention that the affidavit for the warrant contained a misrepresentation of a material fact. Those particular rulings appear not to be challenged here, and we certainly cannot say that they were erroneous.[1]

The defendant relies here solely on his claim of staleness. The government denies that the claim has any merit, and also contends, at least to some extent, that the question of staleness cannot be raised for the first time on appeal. Answering the latter contention, counsel for the defendant argues that the question of staleness was inextricably interwoven with the question of whether or not there was probable cause for the issuance of the warrant and, therefore, was in effect before the Magistrate when he issued the warrant and before the district court when it considered the motion to suppress. Alternatively, counsel contends that to admit evidence obtained by means of a stale warrant is "plain error" correctible by an appellate court under Fed.R.Crim.P. 52(b), 18 U.S.C., even if not raised in the trial court.

Whether a claim of staleness such as is put forward here can be raised for the first time on appeal is a question the existence of which this court noted in passing in *United States v. Golay*, 502 F.2d 182, 187, n. 10 (8th Cir. 1974). The court did not decide the question in that case because it did not think that in view of all of the circumstances of the case the delay involved vitiated the presence of probable cause. *Ibid.*

■ We think that ordinarily a defendant who objects to a search warrant on the basis of staleness should raise the question in the trial court, and we are of the view that in some circumstances a complaint of staleness made for the first time at the appellate level may come too late. However, where the time lapse involved is so substantial that it would obviously be noticed by a reasonably prudent Magistrate requested to issue a search warrant or by a district judge passing on a motion to suppress evidence, the issuance of the warrant in the first instance or the later refusal of the trial court to suppress the evidence may fairly be considered as an implicit finding that the application for the warrant was timely. And in view of the length of time involved here, we will assume that the question of timeliness was before the Magistrate and the district court, and that it is open for our consideration at this stage.

■ We do not question the premise on which defendant's contention is based. It is axiomatic by now that under the fourth amendment the probable cause upon which a valid search warrant must be based must exist at the time at which the warrant is issued, not at some earlier time. That was recognized more than forty years ago in the leading case of *Sgro v. United States*, 287 U.S. 206, 53 S.Ct. 139, 77 L.Ed. 260 (1932). Professor Wright says in this connection:

Probable cause must exist at the time it is sought to make the search. It is not enough that at some time in the past there existed circumstances that would have justified the search in

---

1.  The claim that the affidavit contained a misrepresentation of a material fact was plainly insubstantial. The affidavit recited that the defendant's "fingerprints" had been found on the brown paper bag; actually, only the print of one of the defendant's fingers was found; that single print was sufficient to connect the defendant with the bag.

the absence of reason to believe that those circumstances still exist.

3 Wright, Federal Practice & Procedure § 662, p. 23.

██ Thus, delay in seeking and obtaining a search warrant may invalidate it. While the lapse of time involved is an important consideration and may in some cases be controlling, it is not necessarily so. There are other factors to be considered, including the nature of the criminal activity involved, and the kind of property for which authority to search is sought. Obviously, a highly incriminating or consumable item of personal property is less likely to remain in one place as long as an item of property which is not consumable or which is innocuous in itself or not particularly incriminating. See Sgro v. United States, supra; United States v. Rahn, 511 F.2d 290 (10th Cir. 1975); United States v. Neal, 500 F.2d 305 (10th Cir. 1974); Bastida v. Henderson, 487 F.2d 860 (5th Cir. 1974); United States v. Guinn, 454 F.2d 29 (5th Cir.), cert. denied, 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972); United States v. Hanon, 428 F.2d 101 (8th Cir. 1970), cert. denied, 402 U.S. 952, 91 S.Ct. 1608, 29 L.Ed.2d 122 (1971); Durham v. United States, 403 F.2d 190 (9th Cir. 1968), vacated, 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971); Rosencranz v. United States, 356 F.2d 310 (1st Cir. 1966); Schoeneman v. United States, 115 U.S.App.D.C. 110, 317 F.2d 173 (1963); United States v. Nichols, 89 F.Supp. 953 (W.D.Ark.1950).

Let it be assumed for purposes of discussion that the defendant in fact robbed the bank on June 22 and that he immediately repaired to his home with his loot and its container, his weapon and his disguise. We think that it may be conceded to the defendant that as late as September 17 there was little reason to believe that any of the bank's money or the money bag would still be in the home. But, the same concession cannot be made with respect to the revolver, the ski mask, and the clothing. The ski mask and the clothes were not incriminating in themselves, and apart from his prior felony record possession of the pistol was not unlawful in itself or particularly incriminating. Moreover, people who own pistols generally keep them at home or on their persons. See in this connection United States v. Rahn, supra, and Bastida v. Henderson, supra, which involved searches for weapons.

██ In the circumstances and on the record before us we cannot say that the time lapse with which we are concerned was so great as to invalidate the warrant as a matter of law; nor can we say that the Magistrate abused his discretion in issuing the warrant or that the district court erred in denying the motion to suppress. So, this contention of the defendant will be rejected.

A more difficult question is raised by the contention of the defendant that he was guilty of one offense at most, and that the district court erred in refusing to merge the two counts of the indictment and in imposing consecutive sentences.

██ The statute under which the indictment was drawn defines three separate and distinct offenses, namely, the receipt, possession, or transportation "in commerce or affecting commerce" of a firearm by a convicted felon. While a person, other than a manufacturer, who is found in possession of a firearm has ordinarily "received" it at some time and by some means, including theft, United States v. Kelly, 519 F.2d 251 (8th Cir. 1975), a convicted felon is not necessarily in the unlawful "possession" of a firearm merely because he may have it in his home or on his person. In United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), the Supreme Court held that the statutory reference to interstate commerce is applicable to all three of the offenses defined by the statute, but that the required connection between interstate commerce and mere "possession" of a firearm by a felon is different from and more strict than the nexus required where the individual involved is charged with the "receipt" of a

firearm. In the latter case it is sufficient if it is shown that at some time in the past the weapon has moved in interstate commerce. 404 U.S. at 350–51, 92 S.Ct. 515.

Had the defendant been charged simply with the "possession" of the two rifles, his position would have been well taken in the light of our recent holding in *United States v. Kinsley*, 518 F.2d 665 (8th Cir. 1975). The defendants in that case stole four firearms at one time, and the weapons were seized at one time on the same premises. The defendants were charged with four separate "possessions," were convicted on all four counts of the indictment, and received consecutive sentences. On appeal this court gave comprehensive consideration to the statute, its scheme, and its legislative history. And it was held that the simultaneous unlawful possession of a number of firearms on the same premises constitutes but a single offense.

We do not read *Kinsley*, however, as holding that the receipt of separate firearms on separate occasions constitutes only one offense simply because the weapons are kept in a single possession and are ultimately seized at the same time and on the same premises. And we are satisfied that if a convicted felon receives a firearm on one occasion and later receives another firearm on another occasion, he is guilty of two offenses assuming that prior to the respective receipts the two guns had moved in interstate commerce.

Here, while the defendant was charged with both receipt and possession of the firearms described in the respective counts of the indictment, it was not incumbent on the government to prove both an unlawful receipt and an unlawful possession. And it is clear from the instructions of the trial court to the jury that the case was submitted on a "receipt" rather than a "possession" theory. As a matter of fact the government did not make a submissible "possession" case with respect to either weapon because there was no showing of the required connection between the possession and interstate commerce. *United States v. Bass, supra.*

In view of what has been said, it follows that if the defendant unlawfully received the respective weapons at different times or on different occasions and if prior to his receiving them the weapons had moved in interstate commerce, the defendant was guilty of two offenses rather than one, and the district court did not err in refusing to merge the two counts.

The government proved satisfactorily that both rifles mentioned in the indictment had moved in interstate commerce, and that they had been acquired by the defendant at different times. So far as Count 1 is concerned, the government proved in detail the date of defendant's acquisition of the Belgian rifle, the person from whom he acquired it, and the place and circumstances of the acquisition. In that connection the proof showed that late in 1973 defendant received the gun from Patrick D. Lampi as security for a loan that was never repaid. As to that count, the judgment of the district court is fully supported by the evidence and will be affirmed.

With respect to Count 2 the government proved that the Springfield rifle had been manufactured prior to World War II, and that it had moved in interstate commerce, but it did not prove when the defendant received it.

In urging that the two counts of the indictment should have been merged, counsel for the defendant states in his brief that the dates upon which the weapons were acquired "is not an element of the crime." That statement may be true enough where an individual subject to the statute receives a firearm and is later charged with a subsequent possession or transportation of the weapon "in commerce or affecting commerce." But we do not think that it is correct in a case in which the defendant is charged with "receiving" a firearm, and where the weapon involved is an old one and might have been received prior

to the effective date of the Omnibus Crime Control and Safe Streets Act of 1968 of which § 1202(a)(1) is a part.

 As stated, the rifle mentioned in Count 2 was manufactured before World War II; the Act became effective on October 22, 1968, and the defendant may well have acquired the weapon before that date; certainly, it cannot be presumed that he did not do so. If he did receive the weapon prior to the effective date of the Act, he committed no crime, and his continued possession of it was no crime so long as he did nothing to establish the required connection between possession of the gun and interstate commerce.

 The question that we raise about Count 2 goes beyond any question of "limitation of actions." It goes to the fundamental requirement that the burden is on the government to prove by evidence and beyond a reasonable doubt that with respect to the Springfield rifle the defendant violated the law when he received it, and thus it was incumbent upon the government to prove at least that the weapon came into the defendant's possession after October 22, 1968, and this the government failed to do. We hold, therefore, that the government failed to make a case on Count 2, and that it was plain error to submit that count to the jury.

The view here taken is in accord with the statement of this court appearing in *United States v. Winer,* 519 F.2d 256 (8th Cir. 1975). It was there said:

> [The receiving provision of § 1202 (a)(1)] is not synonymous with a possession charge since receiving requires more than mere proof of possession. Time of the receipt and venue must be proven as well. *Cf. United States v. Overshon,* 494 F.2d 894 (8th Cir.), *cert. denied,* 419 U.S. 853, 878, 95 S.Ct. 96, 142, 42 L.Ed.2d 85, 118 (1974).
>
> . . .

It does not appear that there is reason to believe that upon a retrial of Count 2 the government would be able to prove when or where the defendant acquired the Springfield rifle. Hence, the district court will be directed to enter a judgment of acquittal on Count 2.

The judgment of the district court on Count 1 of the indictment is affirmed; the judgment on Count 2 is reversed, and the cause remanded to the district court with directions to enter a judgment of acquittal on that count.