**UNITED STATES of America, Appellee,**

v.

**Jerry D. WRIGHT, Appellant.**

**No. 80–1414.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 8, 1980.

Decided Feb. 27, 1981.

Philip M. Moomaw, Asst. Federal Public Defender, Springfield, Mo., argued, Thomas M. Bradshaw, Acting Federal Public Defender, W. D. Mo., Kansas City, Mo., for appellant.

Michael A. Jones, Asst. U. S. Atty., Springfield, Mo., argued, Ronald S. Reed, Jr., U. S. Atty., Springfield, Mo., for plaintiff-appellee.

Before HENLEY and McMILLIAN, Circuit Judges, and VAN PELT,* Senior District Judge.

McMILLIAN, Circuit Judge.

Jerry D. Wright appeals from a judgment entered in the district court [1] for the Western District of Missouri upon a jury verdict finding him guilty of making a false statement in connection with the acquisition of a firearm, 18 U.S.C. § 922(a)(6) (count I); receipt of a firearm shipped in interstate commerce, having been convicted of a felony, 18 U.S.C. § 922(h)(1) (count II); and possession with intent to distribute a Schedule IV controlled substance (chlordiazepoxide), 21 U.S.C. § 841(a)(1) (count IV).[2] The district court sentenced appellant to three years imprisonment for each firearm violation, to be served concurrently, and to one year for the drug violation, to be served consecutively to the sentences imposed for the firearm violations, plus a special parole term of one year.

For reversal appellant argues that the district court erred in refusing to suppress the introduction into evidence of certain items allegedly obtained as the result of an illegal search and seizure. For the reasons discussed below, we affirm the judgment of the district court.

In early January, 1980, Special Agent Robert Stumpenhaus of the Bureau of Alcohol, Tobacco and Firearms (ATF) received information through agency channels that appellant was living at a motel in Springfield, Missouri, that appellant had purchased a firearm at a local store and falsified the federal transaction record, and that appellant was selling drugs. Special Agent Stumpenhaus had received similar information about the drug sales from an informant. In an effort to verify this information, Special Agent Stumpenhaus organized an undercover investigation with Springfield police officers Paulette Pretti and Chester Waterhouse. On the evening of January 9, 1980, the three drove to the motel and checked in. They discussed their method of approach and decided to pretend they had car trouble and to seek help from appellant. They knocked on the door of unit 20; when appellant opened the door, they explained they were having car trouble and asked for some tools and a flashlight, which appellant gave them. During this brief exchange, the police officers and ATF agent were crowded at the door and could see inside the motel unit. They saw white powdery substances and drug paraphernalia on a desk or dresser.

After returning the borrowed tools, the three returned to the Springfield Police Department and prepared an application for a search warrant. Each officer made out an affidavit describing his or her encounter with appellant and the white powdery substances which he or she believed to be methamphetamine or "crystal." Based upon this information, a state judge issued a search warrant for unit 20 for controlled substances. The search warrant was executed that night by Springfield police officer Tim Elliott, several other police officers, and ATF Special Agent Joe Wilson. The officers immediately arrested appellant and a woman companion and advised them of their rights. Officer Elliott made a "protective sweep" of the motel unit, evidently checking for other persons, and found a shotgun in one of the closets. Officer Elliott advised the other officers, including Special Agent Wilson, of his discovery.

* The Honorable Robert Van Pelt, United States Senior District Judge for the District of Nebraska, sitting by designation.

1. The Honorable William R. Collinson, United States District Judge for the Western District of Missouri.

2. Appellant was also convicted of possession with intent to distribute another Schedule IV controlled substance (phenobarbital) (count III). The government later dismissed count III with leave of court after an independent chemical analysis indicated the absence of phenobarbital but the presence of other substances which tested "false positive" for phenobarbital.

Special Agent Wilson had prior knowledge that appellant had been convicted of a felony. Besides the shotgun, the officers also found quantities of powdery substances, some pills, a "cutting mirror" and other drug paraphernalia, and a small notebook listing various drugs, quantities and prices.

Prior to trial appellant moved to suppress the admission into evidence of all the physical evidence and several inculpatory statements made immediately following his arrest. The motion to suppress was specifically based on the allegation that the undercover officers' initial encounter with appellant at the motel unit, using the pretext of car trouble, was an unconstitutional search. The district court disagreed and denied the motion to suppress. The jury found appellant guilty on all counts and this appeal followed.

First, appellant argues that the district court erred in refusing to suppress the evidence seized pursuant to the state search warrant because the information establishing probable cause for the warrant was obtained as the result of an unconstitutional search. Appellant argues that the undercover officers' initial "search" of the motel unit was accomplished by affirmative misrepresentation and subterfuge, that is, on the pretext of car trouble. Appellant distinguishes *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), on the ground that in the present case no unlawful purpose was involved. The Court in *Lewis* held that police undercover investigations involving the entry of suspects' homes to purchase contraband, which necessarily included a certain degree of deception and misrepresentation, did not violate the fourth amendment, on the ground that an unlawful purpose was contemplated by the undercover officers. *Id.* at 210–11, 87 S.Ct. at 427.

We cannot agree with appellant's analysis. The fact is that the undercover officers, by standing at the opened door of appellant's motel unit, like any member of the public, could see inside and observe various items in "plain view." "What a person knowingly exposes to the public even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). Appellant's distinction between lawful and unlawful purpose was rejected in *United States v. Raines*, 536 F.2d 796 (8th Cir.), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976). *Accord, United States v. Baldwin*, 621 F.2d 251 (6th Cir. 1980); *United States v. Oakes*, 564 F.2d 384 (10th Cir. 1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978); *United States v. Ressler*, 536 F.2d 208 (7th Cir. 1976); *United States v. Glassel*, 488 F.2d 143 (9th Cir. 1973), *cert. denied*, 416 U.S. 941, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974).

In *Raines* the defendant contended that the undercover agent's entry by ruse into his home was unlawful. The defendant attempted to distinguish *Lewis* on the ground that, unlike *Lewis*, the undercover agent's "announced purpose for appearing at the door, and the defendant's purpose for inviting him inside, were entirely lawful. They sought to discuss the fate of a mutual friend [who had been arrested by the police]." 536 F.2d at 799. This Circuit rejected the attempted distinction and held that the undercover agent's "entry by consent, though obtained by ruse, did not interfere with the defendant's Fourth Amendment rights," *id.* at 800, citing the following language from *United States v. Glassel, supra,* 488 F.2d at 145 (citations omitted):

[A]n officer may legitimately obtain an invitation into a house by misrepresenting his identity ... If he is invited inside, he does not need a warrant, and, quite obviously, he does not need to announce his authority and purpose. Once inside the house, he cannot exceed the scope of his invitation by ransacking the house generally, but he may seize anything in plain view.

While the undercover officers did not reveal their true identity or true purpose in approaching appellant, and to that extent did lie, we recognize "the necessity for some undercover police activity" and that "in the detection of many types of crime, the

Government is entitled to use decoys and to conceal the identity of its agents." *Lewis v. United States, supra,* 385 U.S. at 208–09, 87 S.Ct. at 426.

Here, the undercover officers engaged in minimal deception during the course of their investigation. When they knocked on the door of the motel unit, appellant answered by opening the door and thereby provided the undercover officers with a view inside. The undercover officers did not engage in any conduct inconsistent with that expected or contemplated by appellant when he opened the door. *See United States v. Ressler, supra,* 536 F.2d at 213.

■ Next, appellant argues that the district court erred in refusing to suppress the admission into evidence of the shotgun. Because the search warrant was issued as an authorization for a search for controlled substances only, appellant argues that the shotgun was the result of a general exploratory search beyond the scope of the search warrant. Appellant further argues the seizure of the shotgun cannot be justified under the plain view doctrine because the shotgun was not altered in any way and because none of the police officers executing the search warrant had prior knowledge of appellant's status as a convicted felon. We disagree.

The Fourth Amendment requires that search warrants particularly describe objects to be seized. This specificity of description requirement furthers the Fourth Amendment's goal of privacy by ensuring that even searches deemed necessary and supported by a magistrate's determination of probable cause should be as limited as possible. In this connection, the Supreme Court in *Coolidge v.*

*New Hampshire,* 403 U.S. 443, [91 S.Ct. 2022, 29 L.Ed.2d 564 (1971),] warned that "the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion *per se,* but of a general, exploratory rummaging in a person's belongings."

*United States v. Clark,* 531 F.2d 928, 931 (8th Cir. 1976) (other citations omitted). However,

[i]t is well established that under certain circumstances the police may seize objects not specified in a warrant. But, in order to qualify for the plain view exception, it must be shown (1) that the initial intrusion which afforded the authorities the plain view was lawful; (2) that the discovery of the evidence was inadvertent;[3] and (3) that the incriminating nature of the evidence was immediately apparent.

*Id.* at 932 (citations omitted).

The first requirement, that of lawful initial intrusion, was satisfied here because the officers were acting pursuant to a valid state search warrant authorizing them to search for controlled substances in appellant's motel unit. *See, e. g., United States v. Johnson,* 541 F.2d 1311, 1316 (8th Cir. 1976) (per curiam) (search warrant); *United States v. Clark, supra,* 531 F.2d at 932 (search warrant).

The second requirement, that of inadvertent discovery, was also met. Although the officers probably expected to find a firearm in view of ATF's information about appellant's purchase of a firearm and falsification of the federal transaction record, and in fact might have been able to obtain a search warrant for a firearm, there is no

---

**3.** In *Hare* the Sixth Circuit concluded that "inadvertence" in this context means that the police must be without probable cause to believe evidence would be discovered until they actually observe it in the course of an otherwise-justified search. There are many times when a police officer may "expect" to find evidence in a particular place, and that expectation may range from a weak hunch to a strong suspicion. However, the Fourth Amendment prohibits either a warrant to issue or a search based on such an expecta-

tion. Yet if in the course of an intrusion wholly authorized by another legitimate purpose, that hunch or suspicion is confirmed by an actual observation, the police are in precisely the same position as if they were taken wholly by surprise by the discovery. *United States v. Hare,* 589 F.2d 1291, 1294 (6th Cir. 1979); *but cf. United States v. Cutts,* 535 F.2d 1083, 1084 (8th Cir. 1976) (per curiam) (discovery was anticipated and warrant could have been obtained).

indication in the record that the search warrant for controlled substances was obtained in bad faith or that it was used as an excuse to seize the firearm in plain view and thus evade the warrant requirement. *See, e. g., United States v. Cutts,* 535 F.2d 1083, 1084 (8th Cir. 1976) (per curiam); *United States v. Carwell,* 491 F.2d 1334, 1336 (8th Cir.) (per curiam), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *cf. United States v. Hare,* 589 F.2d 1291, 1293–96 (6th Cir. 1979) (discussion of meaning of "inadvertence" in *Coolidge*). "We have previously held lawful the warrantless seizure of weapons or contraband during the course of an otherwise authorized search, notwithstanding that the discovery was anticipated and that a warrant could have been obtained." *United States v. Cutts, supra,* 535 F.2d at 1084 (citations omitted).

The third requirement, that the incriminating nature of the evidence be immediately apparent, gives us some trouble. The shotgun in the present case had not been altered in any way; its appearance was not unlawful. *See, e. g., United States v. Johnson, supra,* 541 F.2d at 1316 (sawed-off shotgun); *United States v. Wilson,* 524 F.2d 595, 598 (8th Cir. 1975) (sawed-off shotgun), *cert. denied,* 424 U.S. 945, 96 S.Ct. 1415, 47 L.Ed.2d 351 (1976). Nor do we accept the government's attempt to show in the present case a reasonable relationship between the shotgun and the crime of unauthorized possession with intent to distribute of controlled substances. *See, e. g., United States v. Golay,* 502 F.2d 182, 184 & n.4 (8th Cir. 1974). We do, however, find that the shotgun constituted evidence of another crime, that is, receipt of a firearm by a convicted felon.

It is unclear from the record whether Officer Elliott, the seizing officer, had *personal* knowledge of appellant's prior felony conviction at the moment he saw the shotgun in the closet. Special Agent Wilson, evidently representing ATF and present on the scene during the execution of the search warrant, however, did possess such information and thus knew that appellant's possession of the shotgun was unlawful. The record in the present case indicates that ATF special agents and local police officers were working closely together during the investigation for and in execution of the search warrant, although there is no record evidence of actual communication between Special Agent Wilson and Officer Elliott. Under these circumstances we think that consideration of the *collective* knowledge of the officers on the scene, including Special Agent Wilson, is appropriate.[4] *See United States v. Stratton,* 453 F.2d 36, 37 (8th Cir.), *cert. denied,* 405 U.S. 1069, 92 S.Ct. 1515, 31 L.Ed.2d 800 (1972) (collective knowledge for probable cause to arrest); *accord, United States v. Bernard,* 623 F.2d 551, 560–61 & n.5 (9th Cir. 1979) (collective knowledge for probable cause to arrest); *United States v. Clark,* 559 F.2d 420, 424 (5th Cir.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); *United States v. Woods,* 544 F.2d 242, 259–60 (6th Cir. 1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361, 431 U.S. 954, 97 S.Ct. 2675, 53 L.Ed.2d 270 (1977). *Cf. United States v. Malachesen,* 597 F.2d 1232, 1234–35 (8th Cir.) (seizure of loaded handgun, although incriminating nature may not have been immediately apparent to investigating officers, upheld as reasonable precaution to ensure safety), *cert. denied,* 444 U.S. 902, 100

---

4. There is no evidence in the record indicating that Officer Elliott acted at the order or direction of Special Agent Wilson, *cf. Whiteley v. Warden,* 401 U.S. 560, 566–68, 91 S.Ct. 1031, 1035, 28 L.Ed.2d 306 (1971) (arresting officer's reliance upon radio bulletin), or that the state search warrant was used as a subterfuge for a contemporaneous, warrantless search by ATF special agents for weapons, *see United States v. Sanchez,* 509 F.2d 886 (6th Cir. 1975) (explosives).

Departing somewhat from the apparent trend in the case law, I would require a more specific showing before applying the collective knowledge test. I would be reluctant to impute the knowledge of one law enforcement officer to another, even though they are working together and in communication with each other, unless there is evidence of actual communication of that information or unless the officer who had the information ordered or directed the other officer to act. *See generally* 1 W. LaFave, Search and Seizure § 3.5(c) (1978).

S.Ct. 214, 62 L.Ed.2d 139 (1979). Thus, the observation of the shotgun constituted probable cause for the seizure of the shotgun as evidence of another crime being committed in the presence of the officers, that is, receipt of a firearm by a convicted felon. *See, e. g. United States v. Golay, supra,* 502 F.2d at 184 & n.3.

We conclude that the district court did not err in denying the motion to suppress evidence, and, accordingly, affirm the judgment of the district court.