UNITED STATES of America, Appellee,

v.

**Bruce Wayne JOHNSON, Appellant.**

**No. 82–1222.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1982.

Decided May 4, 1983.

---

Donald L. Wolff, Wolff & Frankel, Clayton, Mo., for appellant.

Robert T. Haar, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Bruce Wayne Johnson appeals the district court's [1] denial of his petition for post conviction relief under 28 U.S.C. § 2255. Johnson was convicted of three federal firearm offenses: possession of a firearm by a felon in violation of 18 U.S.C.App. § 1202(a)(1); possession of a twelve gauge, unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871; and pos-

---

1. The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri.

session of the same twelve gauge shotgun without serial numbers in violation of 26 U.S.C. §§ 5842, 5861(i) and 5871. Johnson alleges that he received ineffective assistance of counsel at his trial because his attorney failed to move for suppression of the firearms, which Johnson contends were seized during an illegal search of the residence. We affirm.

At the time of the search Johnson was a suspect in a state capital murder case arising out of a shooting in St. Louis County, and was believed to be keeping drugs at his residence. The police had been conducting surveillance of Johnson's home for a month or more before they obtained a search warrant. The police had reason to believe they would find drugs[2] and firearms at Johnson's residence. Since there apparently were no state charges which could be brought concerning the firearms, the police contacted a federal Alcohol, Tobacco & Firearms (ATF) agent and requested that he participate in the search. The police sought and obtained a state search warrant listing drugs and drug paraphernalia as the only items to be searched for. No federal warrant was obtained. Pursuant to the state warrant the St. Louis County police, accompanied by an ATF agent, searched Johnson's residence. No drugs were found,[3] but they discovered a .38 caliber revolver and a sawed-off shotgun during a search of Johnson's bedroom. The revolver was found under his bed and the shotgun was found between the mattresses of the bed. The ATF agent who accompanied the police did not take part in the search until the residence had been entered and secured by the police, and he seized no weapons.

Both state capital murder charges and federal firearms charges were brought against Johnson. Johnson was acquitted of capital murder. He waived a jury trial on the federal charges and was tried by the court. Johnson's trial counsel, Allen Harris, filed several pretrial motions, but he did not file a motion to suppress the weapons, which constituted the primary evidence against Johnson, because he did not believe such a motion was meritorious. Instead, he defended Johnson on the theory that constructive possession of the weapons had not been proven. Johnson was convicted on all three counts, and his conviction was affirmed by this court.[4]

Johnson subsequently filed a § 2255 petition in district court, making various allegations of ineffective assistance of counsel. An attorney was appointed for Johnson and an evidentiary hearing was held before a magistrate. After making a detailed analysis of Johnson's allegations, the magistrate recommended that his petition be denied, and the district court adopted this recommendation.

At the § 2255 hearing Johnson's trial attorney, Allen Harris, testified that he had not moved to suppress the firearms because he was unaware of a line of cases, relied on by Johnson in this appeal, indicating that the search of Johnson's residence was illegal. Harris testified that had he been familiar with this line of cases he would have filed a motion to suppress, and that he believed such a motion would have succeeded.

On appeal, Johnson's attorney has abandoned several of the points raised before the district court, and confines his argument to trial counsel's failure to file a motion to suppress the weapons.[5]

2. A previously reliable informant told the police that she had been in Johnson's home the day before the search. She had seen marijuana cigarettes and marijuana in clear plastic and brown paper bags. She had also seen a white crystalline substance which Johnson identified as cocaine.

3. It took the police between four and six minutes to enter the premises after they first knocked on the door. During this time the police heard running inside and someone saying, "It's the police." Fearing evidence was being destroyed, they entered forcibly.

4. *United States v. Johnson*, 614 F.2d 622 (8th Cir.1980).

5. Johnson has also filed a *pro se* brief alleging as additional points of error that the search warrant was invalid, that his attorney was ineffective in advising him to waive a jury trial, that the district court erred in refusing to consider his untimely motion to suppress and that

The government argues that since Johnson waived his right to make a motion to suppress at trial, he must meet the standards set out in *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) in order to prevail on his § 2255 petition. In *Frady* the Supreme Court held that a § 2255 petitioner must demonstrate both cause for his procedural default and prejudice resulting from the alleged violation of his rights. Johnson in turn argues that his counsel's ineffectiveness is adequate cause for failure to make the motion to suppress under the *Frady* standard, and that prejudice has been established since the motion, had it been made, would have been successful.

We examine Johnson's contentions in light of both the *Frady* standard and Fourth Amendment requirements. We turn first to Johnson's ineffective assistance of counsel argument to determine whether the cause requirement of *Frady* has been met. In order to establish ineffective assistance of counsel, Johnson must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances, and (2) that he was prejudiced by the attorney's ineffectiveness. *Harris v. Housewright,* 697 F.2d 202 (8th Cir.1982); *Eldridge v. Atkins,* 665 F.2d 228 (8th Cir.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982); *United States v. McMillan,* 606 F.2d 245, 247 (8th Cir.1979).

The failure to make a motion to suppress what is essentially the only evidence against a defendant can be sufficient to establish lack of diligence on the part of the attorney if the motion would have succeeded. *United States v. Easter,* 539 F.2d 663 (8th Cir.1976), *cert. denied* 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977). In determining whether there was prejudice to appellant from the asserted lack of diligence, we must look into the underlying issue of whether a motion to suppress the

weapons, if one had been made, would have been successful. Johnson contends that the seizure of the firearms was unconstitutional because the warrant authorizing the search permitted the police to search only for narcotics, and because the search was conducted jointly by state and federal officers even though the only warrant obtained related to state narcotics offenses.

This circuit has upheld searches involving the same elements as the search conducted here. In *United States v. Wright,* 641 F.2d 602 (8th Cir.), *cert. denied* 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981), an ATF agent had learned that defendant, a convicted felon, had purchased a firearm and falsified the records of the purchase, and that defendant was selling drugs from his motel room in Springfield, Missouri. In order to corroborate this information, the ATF agent recruited two Springfield police officers to help in an undercover investigation. After persuading defendant to open his motel room door by telling him that they had car trouble, the ATF agent and the police officers observed a white powdery substance and drug paraphernalia on a desk or dresser in the room. They then returned to the Springfield Police Department and applied for a search warrant stating that they had observed the white powdery substance which they believed to be drugs. A state judge issued a search warrant authorizing the officers to search only for controlled substances. Several police officers and a second ATF agent executed the warrant later that evening, seizing drugs, drug paraphernalia, a notebook listing prices and quantities of drugs and a shotgun which one of the officers found during a "protective sweep" of the room.

The search in *Wright* was conducted jointly by state and federal agents. We upheld the validity of the search in the absence of evidence that "the state search warrant was used as a subterfuge for a contemporaneous, warrantless search by ATF special agents for weapons." 641 F.2d

the district court was biased against him. We have considered these arguments and find them

to be without merit.

at 606, n. 4. We cannot conclude in this case that the state warrant authorizing a search for narcotics was a subterfuge for a warrantless ATF search. There is no indication that the state warrant was not obtained in good faith. The fact that federal and state agents collaborated in the search, or that the presence of illegal firearms was strongly suspected by federal agents before the search, or even the fact that probable cause may have existed to obtain a search warrant for the firearms, does not amount to a showing that the state search warrant was used as "a subterfuge".[6] All these factors were present in the *Wright* case. In this case there was in fact less federal involvement than in *Wright,* where the ATF agent himself instituted the investigation and helped obtain the state search warrant.

In *Wright,* as in this case, the warrant authorized a search for drugs only and did not specifically list the firearm which was seized. We nevertheless upheld the search in *Wright,* finding that the seizure of the firearm fell within the "plain view" exception to the warrant requirement. We considered the three requirements of plain view, finding that (1) the intrusion itself was lawful because it was authorized by a valid state search warrant, (2) the discovery of the shotgun was inadvertent because "[a]lthough the officers probably expected

to find a firearm in view of the ATF's information about appellant's purchase of a firearm and falsification of the federal transaction record, and in fact might have been able to obtain a search warrant for a firearm, there is no indication in the record that the search warrant for controlled substances was obtained in bad faith or that it was used as an excuse to seize the firearm in plain view and thus evade the warrant requirement," 641 F.2d at 605–06, and (3) the incriminating nature of the evidence was immediately apparent. In regard to the third element we concluded that the shotgun, though unaltered, was clearly evidence of a separate crime, receipt of firearm by a felon, in view of the searching officers' knowledge of defendant's previous convictions.

■ We conclude that the search here was also valid under the plain view doctrine: (1) The initial intrusion was lawfully made pursuant to a valid search warrant. (2) The discovery of the weapons was inadvertent, notwithstanding the fact that the searching officers expected to find the firearms and may have been able to obtain a warrant to search for them since, as in *Wright,* there is no indication that the warrant to search for drugs was obtained in bad faith or used as an excuse to seize the firearms. (3) The incriminating nature of

6. As authority for his argument that a joint state-federal search was illegal, Johnson refers to *Byars v. United States,* 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927). In *Byars* a local police officer and a federal revenue agent jointly searched defendant's premises, and in the course of the search found a number of counterfeit internal revenue stamps. Defendant was convicted in federal court of unlawful possession of the stamps.

The Supreme Court concluded that the underlying state search warrant did not meet Fourth Amendment standards. The court then went on to find that the participation of the federal agent made the search a joint operation of local and federal officers. Having found substantial federal participation in the search, the Court ruled that the counterfeit internal revenue stamps had to be suppressed because the search during which they were found was conducted in violation of the Fourth Amendment.

At the time *Byars* was decided, the Fourth Amendment applied only to federal searches, and even in cases where a state's seizure of evidence was clearly improper, the Fourth Amendment did not prevent its subsequent use in a federal prosecution (the "silver platter" doctrine). *Byars* did not hold that a joint state-federal search rendered evidence inadmissible. Rather, *Byars* simply limited the silver platter doctrine by holding that, when federal agents participated in the illegal search, the evidence had to be excluded at the federal prosecution. The discussion in *Byars* of the type of federal involvement necessary to render a search a joint state-federal undertaking would have been unnecessary but for the silver platter doctrine. This discussion is now of little precedential value since the silver platter doctrine has long been discredited. *See Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

the firearms was immediately apparent because of Johnson's status as a known felon.[7]

■ Johnson seems to be arguing that the firearms were not in "plain view" because they were hidden in and under the bed, and were not openly visible when the officers entered the room. However, the firearms can still fall within the plain view doctrine because they were discovered " 'in a place where the officer ha[d] a right to be.' " *United States v. Criswell,* 696 F.2d 636, 640, (8th Cir.1983) (marijuana found in a jar in the freezer compartment of defendant's refrigerator held to be in plain view), quoting from *Washington v. Chrisman,* 455 U.S. 1, 5, 102 S.Ct. 812, 816, 70 L.Ed.2d 778, 784 (1982).

In arguing that a motion to suppress would have been granted, Johnson relies primarily on two cases from the Sixth Circuit: *United States v. Sanchez,* 509 F.2d 886 (6th Cir.1975), and *United States v. Carney,* 356 F.Supp. 855 (D.Tenn.1973).

In *United States v. Sanchez* both local police officers and a federal ATF agent searched defendant's home. The warrant authorized a search for narcotics only, even though the officers had probable cause to believe defendant was also illegally storing explosives at his home. During the search they found two containers of explosives which were not concealed and were plainly visible. The ATF agent confirmed that the serial numbers matched those of explosives reported as stolen, and the explosives were seized. The Sixth Circuit ruled that since the ATF agent had probable cause and could have obtained a search warrant for the explosives, his failure to do so rendered the explosives inadmissible. The court held that the plain view doctrine, which requires that the objects seized must have been found inadvertently, did not apply when the searching officer had probable cause to believe he would find the objects ultimately seized.[8]

Similarly, in *United States v. Carney,* a Tennessee District Court suppressed an unregistered rifle silencer seized in a search conducted by both a local police officer and an ATF agent. The search warrant listed only drugs and drug paraphernalia, and there had been no attempt to obtain a warrant regarding the silencer. The district court held that the ATF search was illegal since the ATF agent could have gotten a search warrant for the silencer.

It appears from *Sanchez* and *Carney* that under the Sixth Circuit rule the existence of probable cause precludes the warrantless seizure of even weapons or contraband found in plain view during an otherwise lawful search. This circuit, however, has consistently applied the rule that "the warrantless seizure of weapons or contraband during the course of an otherwise authorized search" is not necessarily unlawful "notwithstanding that the discovery was anticipated and that a warrant could have been obtained," *United States v. Cutts,* 535 F.2d 1083, 1084 (8th Cir.1976). *Accord: United States v. Carwell,* 491 F.2d 1334 (8th Cir.), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *United States v. Wright, supra.*

---

7. The police were familiar with Johnson's prior conviction because they had been investigating him for several weeks before the search. Johnson does not contend that the searching officers were unaware of his prior record. In his brief Johnson quotes a passage from testimony given by one of the searching officers in a *suppression hearing held in connection with* the capital murder case against Johnson. In the passage quoted the officer indicates he was aware of Johnson's previous conviction.

8. In the later case of *United States v. Hare,* 589 F.2d 1291 (6th Cir.1979), the Sixth Circuit reiterated the rule that the existence of probable cause prevents reliance on the plain view doc-

trine, but limited it by holding that when the police officer's "expectation" of discovery of certain items is based merely on a suspicion insufficient to amount to probable cause, he need not obtain a warrant, and if he subsequently finds such items in the course of an otherwise legal search, he is "in precisely the same position as if [he] were taken wholly by surprise by the discovery." 589 F.2d at 1294. *Hare* also made clear that it was the existence of probable cause to search for explosives, and not the joint state-federal nature of the search, which rendered the explosives inadmissible in *Sanchez. Id.* at 1296–97.

In view of our holdings in *Wright, Cutts* and *Carwell,* we conclude that a motion to suppress, had one been made, would not have been successful in this case. Neither the joint state—federal nature of the search nor the failure to list weapons in the warrant would have invalidated the search; even assuming that the officers had probable cause to search for the firearms and could have had them listed in the warrant, the weapons still could have been seized in accordance with the plain view doctrine as set forth in *Wright.* We thus conclude that Johnson has failed to establish ineffectiveness of counsel. There was neither prejudice to his defense, since a motion to suppress would not have succeeded, nor lack of due diligence on the part of his attorney, since an attorney will not be held negligent for failure to make a non-meritorious motion.

Having concluded that Johnson's counsel was not ineffective in his representation, we must also conclude that he has not shown cause under the *Frady* standard. *Fowler v. Parratt,* 682 F.2d 746, 751 (8th Cir.1982). In addition, we conclude that Johnson has failed to meet the prejudice requirement of *Frady* since a motion to suppress would not have been successful.

Thus, whether we approach this case purely under the *Frady* standard or concentrate on the underlying Fourth Amendment argument, we reach the same conclusion: the decision of the district court denying Johnson's § 2255 motion must be affirmed.[9]

---

9. Johnson also contends that the search warrant violated the "particularity" requirement of Rule 41 of the Federal Rules of Criminal Procedure in that it failed to list the firearms which were seized. We find this argument to be without merit.