**UNITED STATES of America, Appellee,**

v.

**Kirby L. CRISWELL, Appellant.**

**No. 82–1772.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1982.

Decided Jan. 6, 1983.

James W. Drese, Chesterfield, Mo., for Kirby L. Criswell.

Thomas E. Dittmeier, U.S. Atty., St. Louis, Mo., Larry D. Hale, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and McMILLIAN and JOHN R. GIBSON, Circuit Judges.

McMILLIAN, Circuit Judge.

Kirby L. Criswell appeals from a final judgment entered in the District Court for the Eastern District of Missouri[1] upon a jury verdict finding him guilty of conspiracy to manufacture and distribute amphetamines in violation of 21 U.S.C. §§ 841(a) and 846, and of possession of marijuana in violation of 21 U.S.C. § 844(a). For reversal appellant argues that the district court erred in failing to suppress an incriminating statement made by appellant and evidence of marijuana seized during a search of his apartment.[2] For the reasons discussed below, we affirm.

---

1. The Honorable James H. Meredith, United States Senior District Judge for the Eastern District of Missouri.

2. We note that although appellant filed a pretrial motion to suppress the statement and the marijuana, he did not object to their admission at trial. As a general rule, "the overruling of a pretrial motion to suppress the use at the trial of particular evidence preserves the point and renders it unnecessary again to object when such evidence is offered at trial." *Lawn v. United States,* 355 U.S. 339, 353, 78 S.Ct. 311, 319, 2 L.Ed.2d 321 (1958). We feel, however, the better practice is for a defendant to object at trial when the evidence is offered.

The evidence viewed in the light most favorable to the jury verdict reveals the following. Appellant and Dorian Groff lived across the hall from one another in an apartment complex in St. Louis County. In early March 1982 appellant and Groff agreed to manufacture and distribute methamphetamines. On March 29, 1982, appellant lent Groff his automobile so that Groff could drive to Chicago to purchase precursor chemicals and equipment. After Drug Enforcement Administration (DEA) agents in Chicago alerted St. Louis DEA agents that an individual using appellant's name and automobile had purchased precursor supplies, St. Louis DEA agents set up surveillance at appellant's apartment complex.

Based on the agents' observation of the activities of appellant and Groff, on April 2 a magistrate issued search warrants for the apartments of appellant and Groff. During the search of appellant's apartment, a jar of marijuana was found in the freezer compartment of the refrigerator. Precursor chemicals and equipment were seized at Groff's apartment. Appellant and Groff were immediately arrested and advised of their *Miranda* rights.[3] On April 3 appellant and Groff were arraigned before a magistrate.

On April 5 DEA agents Stoddard and Patterson transported appellant and Groff from the county jail to the federal courthouse. During the twenty to thirty minute automobile trip, "general conversation ensued." The topics of conversation included the weather, condominium living, jail conditions, and penalties for the charged offenses. During the conversation appellant stated, "I hope you don't think that we're a couple of big dope dealers [or peddlers]. We're just two guys who f_____ up."

Appellant filed a motion to suppress the statement, alleging generally that the statement was violative of his fourth, fifth and sixth amendment rights. After a hearing on the motion to suppress, from the bench the district court denied the motion, finding that the statement was not made in response to police questioning but was spontaneous and voluntary and therefore admissible.

■ On appeal appellant argues that the statement was an inadmissible product of custodial interrogation, citing *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is clear appellant was in custody at the time he made the statement. We must, therefore, determine whether appellant made the statement in response to interrogation by the DEA agents.

> [T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.[4]

*Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) (footnotes omitted). Applying *Innis* to the facts of this case, we find appellant's statement was not a product of interrogation.

Appellant's trial testimony makes clear that he did not believe the DEA agents were attempting to elicit an incriminating statement from him. Appellant characterized the conversation in the automobile as a "genuine, a general conversation."[5] Appellant stated that Groff did not participate in the conversation but "stayed low." In contrast, appellant "[tried] to make the best

---

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. The Court explained that the focus is on the perceptions of the suspect to reflect "the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police." 446 U.S. at 301, 100 S.Ct. at 1690.

5. Agents Stoddard and Patterson testified that the conversation was "general." Agent Patterson's recollection was that appellant's statement followed a discussion of penalties for drug offenses.

out of it" and "joked" with the agents, "mooched" cigarettes, and initiated several topics of conversation, including the topic of conversation that led to the incriminating statement.

In response to a request from his counsel to place the statement in the context of the conversation, appellant related the following. Prior to the automobile trip to the federal courthouse, appellant was taken to a DEA office. At the office appellant saw photographs of "all kinds of drug paraphernalia" and of airplanes used to transport plane-loads of drugs. No one at the DEA office discussed the photographs with appellant. The photographs, however, made a "big impression" on appellant. Later, during the automobile trip, appellant began talking about his arrest and then "got into talking about the pictures." According to appellant, he made the incriminating statement in order to contrast his situation to that of a "big dope dealer." Under these facts, we find appellant's statement was not a product of interrogation but was a volunteered statement.[6] *See United States v. Madison,* 689 F.2d 1300, 1306–07 (7th Cir. 1982); *United States v. Thierman,* 678 F.2d 1331, 1333–37 (9th Cir.1982); *United States v. Hackley,* 636 F.2d 493, 497–502 (D.C.Cir. 1980).

It is unclear whether appellant is also asserting that the statement violated his sixth amendment right to counsel. Appellant's sixth amendment right to counsel attached at the time he made the statement because he had been arraigned. *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972). Although appellant framed the issue on appeal solely in terms of his fifth amendment right to counsel, in his brief he cites to case law involving sixth amendment rights under *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). We will address the sixth amendment issue.

■ Once the sixth amendment right to counsel attaches, law enforcement authorities cannot "deliberately elicit" incriminating statements from the accused in the absence of counsel. *Massiah v. United States,* 377 U.S. at 206, 84 S.Ct. at 1203. To determine whether the authorities "deliberately elicited" a statement, courts look primarily to the intent of the police.[7] In *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), the Supreme Court found that during the course of a 160-mile automobile trip police officers "deliberately and designedly" set out to elicit an incriminating statement from an accused by use of a psychological ploy. *Id.* at 399, 97 S.Ct. at 1239. There is nothing in this case to suggest that the DEA agents intended to "deliberately elicit" an incriminating response. Rather, the evidence is that appellant volunteered the statement.

---

6. This case is distinguishable from *Stumes v. Solem,* 671 F.2d 1150 (8th Cir.1982), *petition for cert. filed,* 50 U.S.L.W. 3949 (U.S. April 30, 1982) (No. 81–2149). In *Stumes* the court applied *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and found that the defendant's admission was an unlawful product of police interrogation during a 600-mile automobile trip. Although there had been some "general conversation" in the automobile, defendant's admission came "only after he had been questioned intermittently [about the crime] during the trip." *Id.* at 1153. In *Edwards* the Supreme Court held that once a suspect invokes his fifth amendment right to counsel he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484–85, 101 S.Ct. at 1885.

7. This is in contrast to the fifth amendment right to counsel inquiry. *See* note 4 *supra* and accompanying text. Sixth amendment right to counsel cases often arise when the government uses undercover agents to obtain information. *E.g., United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). In these cases, the perceptions of the accused are irrelevant because he is unaware of government involvement. *Id.* at 272–74, 100 S.Ct. at 2187–88. For a discussion of the often elusive distinction between fifth and sixth amendment rights to counsel, *see* Kamisar, Brewer v. Williams, Massiah *and* Miranda: *What is "Interrogation"? When Does It Matter?,* 67 Geo.L.J. 1 (1979), cited in *Rhode Island v. Innis,* 446 U.S. at 300 n. 4, 100 S.Ct. at 1689 n. 4.

Appellant also alleges that the district court erred in failing to suppress the evidence of marijuana seized during the search of his apartment. Appellant contends that the seizure of marijuana exceeded the scope of the warrant and did not fall within the plain view doctrine. The warrant authorized a search for amphetamines, precursor chemicals, equipment and other related items. At the suppression hearing, the DEA agent testified that while executing the warrant he discovered a jar in the freezer compartment of appellant's refrigerator containing a "leafy green substance" he believed to be marijuana. The district judge found that the marijuana was admissible as evidence of commission of another crime. "This court has repeatedly held that an item discovered in a search authorized by a warrant but not described therein may be seized if it is evidence 'of another crime being committed in [the searching officer's] presence'...." *United States v. Golay,* 502 F.2d 182, 184 (8th Cir.1974) (footnote and citation omitted). The warrantless seizure of the item, however, must fall within an exception to the fourth amendment general requirement of a search warrant. *Id.* Here, the plain view doctrine is applicable.

" '[T]o qualify for the plain view exception, it must be shown (1) that the initial intrusion which afforded the authorities the plain view was lawful; (2) that the discovery of the evidence was inadvertent; and (3) that the incriminating nature of the evidence was immediately apparent.' " *United States v. Wright,* 641 F.2d 602, 605 (8th Cir.) (footnote omitted), *cert. denied,* 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981), *quoting United States v. Clark,* 531 F.2d 928, 931 (8th Cir.1976). All these requirements are met here. The DEA agent was acting pursuant to a valid warrant; the agent did not anticipate the discovery of the marijuana; and the agent reasonably believed the leafy substance to be marijuana. *See Washington v. Chrisman,* 455 U.S. ——, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982)

(seizure of seeds by university police officer believed to be marijuana). Appellant's only challenge to the application of the plain view doctrine is that because the marijuana was in a jar in the freezer compartment it was not in "plain view." He, however, does not dispute that it was lawful for the agent to search the freezer for the items described in the warrant. In this case, the marijuana fell into "plain view" because "it [was] discovered in a place where the officer ha[d] a right to be." *Washington v. Chrisman,* 102 S.Ct. at 816. Accordingly, we find the DEA agents properly seized the marijuana.[8]

Accordingly, the judgment is affirmed.

---

**8.** During the search the DEA agents also seized "sno-seals," which are items commonly used to package drugs. In its brief the government argues the sno-seals were also properly seized under the plain view doctrine. We would agree. Appellant, however, does not challenge their seizure.