48 F.3d 1217
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph JOHNSON, Defendant-Appellant.
 No. 94-5225.
 United States Court of Appeals, Fourth Circuit.
 Submitted Jan. 31, 1995.
Decided March 6, 1995.
 
 Elizabeth Dashiell Scher, MORCHOWER, LUXTON & WHALEY, Richmond, VA, for Appellant. Helen F. Fahey, United States Attorney, Stephen W. Miller, Assistant United States Attorney, Richmond, VA, for Appellee.
 Before WILKINS and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Joseph Johnson appeals his conviction on numerous drug and firearms charges. Johnson asserts that the district court improperly denied his motion to suppress evidence and motion to subpoena a witness, and that insufficient evidence existed to convict him of one charge. Finding no error, we affirm.
 
 
 2
 Johnson was indicted in a fifteen-count indictment in November 1993. The indictment charged him with being a felon in possession of a firearm in violation of 18 U.S.C.A. Sec. 922(g) (West Supp.1994), making false statements to obtain firearms in violation of 18 U.S.C.A. Sec. 924(a)(1)(A) (West Supp.1994), and conspiring to possess with the intent to distribute and to distribute in excess of fifty grams of cocaine base, in violation of 21 U.S.C. Sec. 846 (1988). The indictment also charged Johnson with possession with the intent to distribute and distribution of cocaine in violation of 21 U.S.C.A. Sec. 841 (West 1981 & Supp.1994) and carrying and using firearms in relation to drug crimes in violation of 18 U.S.C. Sec. 924(c) (West Supp.1994).
 
 
 3
 A jury convicted Johnson on all but two counts. Johnson was sentenced to an aggregate term of 248 months. Johnson timely appealed, averring that the district court erred in denying his motion to suppress certain statements and in denying his request for issuance of a subpoena for a witness. Johnson also alleged that the Government presented insufficient evidence to support his conviction on one of the drug charges. Johnson does not challenge the sentences imposed for his convictions.
 
 
 4
 The events leading to Johnson's convictions are relatively straightforward. Johnson, a convicted felon, obtained numerous guns from the Virginia Police Equipment Company ("VPEC"), a federally licensed firearms dealer in Richmond, Virginia. In December 1990 and January 1991, Johnson purchased the guns himself. In the course of making the purchases, Johnson signed a Federal Firearms Transaction Record falsely stating that he had not previously been convicted of a felony.
 
 
 5
 In March 1991, Johnson persuaded Kevin Fobbs to obtain some guns for him. Fobbs purchased seven pistols for Johnson on March 5, 1991. Upon returning home that evening, agents from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") approached Fobbs regarding his purchase that day. Fobbs acknowledged that he had purchased the firearms for an individual known to him as "Joe." Fobbs identified Johnson's residence as 555 Laburnum Avenue in Richmond, Virginia, identified Johnson's car as a yellow Toyota, and gave the ATF agents a description of Joe. Fobbs told the agents that Joe was connected with a drug distribution operation located in the 1300 block of West Cary Street in Richmond and that Fobbs was taking the firearms to that location.
 
 
 6
 Fobbs became an informant for the agents' investigation. On April 4, 1991, Fobbs notified the ATF agents that Joe had again requested his help in purchasing firearms. The agents set up surveillance outside VPEC and observed as Fobbs, Johnson, and a third person arrived. Fobbs and Johnson entered the store. Soon thereafter, the agents saw Fobbs exit the store. Fobbs testified that he signed the federal firearms form and left. Johnson remained inside the store for fifteen minutes. Fobbs then re-entered the store and emerged several minutes later with Johnson. Johnson was carrying a package which Fobbs later testified contained three firearms signed for by Fobbs.
 
 
 7
 The ATF agents followed Johnson and Fobbs to Parkwood Avenue, near the 1300 block of West Cary Street. Johnson carried the firearms package through an alley to 1309 West Cary Street. Johnson made several trips between the West Cary Street location and his vehicle. Eventually, he returned to the car with the firearms, concerned that police might be in the area. Johnson took the firearms to his residence at 555 Laburnum Avenue.
 
 
 8
 In response to a call from Fobbs, ATF agents again set up surveillance at VPEC on June 5, 1991. Johnson and Fobbs arrived in a gray Ford Thunderbird. The two men entered the store. When they emerged a few minutes later, Johnson was carrying a bag containing five firearms signed for by Fobbs.
 
 
 9
 ATF agents again followed Fobbs and Johnson to Parkwood Avenue near the 1300 block of West Cary Street. Johnson carried the bag through the alley to 1309 West Cary Street. While at that apartment, Johnson exited the front door, checked the mailbox located next to the door, and re-entered the apartment. As he left the residence to return to the car, a gray Ford van left from the alley behind 1309 West Cary Street.
 
 
 10
 ATF agents followed the van north on Interstate 95 and stopped the van just south of Fredericksburg, Virginia. The agents searched the van but did not find any firearms. Later that evening, however, the five firearms that Johnson had obtained were recovered in a dumpster a few miles north of where the van was stopped. Johnson's fingerprints were recovered from one of the gun boxes.
 
 
 11
 Meanwhile, ATF agents also followed the Ford Thunderbird as it left Parkwood Avenue. The agents stopped the car shortly after it exited Interstate 64. The occupants were identified as Fobbs and Joseph Johnson of 555 Laburnum Avenue. Johnson denied that he and Fobbs had been at the gun store earlier that day. Johnson also refused to allow the agents to search the vehicle.
 
 
 12
 The agents did, however, conduct a search of 1309 West Cary Street that same day. The agents recovered numerous documents in the name of Joseph Johnson, including a Virginia Power receipt for 1309 West Cary Street, a rental receipt for the same address, and four automobile leases in Johnson's name, listing the residence address of 555 Laburnum Avenue. The agents also recovered a shotgun that Johnson purchased on December 22, 1990, along with a second shotgun.
 
 
 13
 Finally, the agents seized a locked safe, which later was found to contain an automobile lease in the name of Joseph Johnson, a receipt in Johnson's name for the Thunderbird that Johnson and Fobbs used to leave the gun store on June 5th, eighteen bags of crack cocaine totaling 79.48 grams, and one bag of cutting agent used to adulterate cocaine base. A real estate rental agent testified that the West Cary Street address was rented by Joseph Johnson from November 1990 until July 1991, and that Johnson failed to pay the rent after the search described above.
 
 
 14
 A federal warrant was issued in Richmond, Virginia on February 16, 1993, for Johnson's arrest on the charges contained in the initial indictment. Johnson was arrested on that warrant in Albany, New York, on August 27, 1993, by the Albany Police Department. William Mayo, a special ATF agent, took possession of Johnson from the Albany Police Department. Agent Mayo had not participated in the investigation of Johnson and was not familiar with the facts of the case. Agent Mayo had no intention of interrogating Johnson. Accordingly, he did not advise Johnson of his Miranda[1] rights.
 
 
 15
 While obtaining routine booking information from Johnson, Agent Mayo confirmed with Johnson his birthdate, birthplace, and social security number. Agent Mayo also confirmed that Johnson had formerly lived at 555 Laburnum Avenue in Richmond, Virginia, and had rented an apartment at 1309 West Cary Street in Richmond. In response to Mayo's question regarding the West Cary Street address, Johnson offered that he had obtained that address for others and that he was aware that police had seized drugs from that location.
 
 
 16
 During the booking procedure, Johnson asked Mayo for a copy of the charges against him. The only information Mayo had was the first page of the initial indictment, which lists the statutes that Johnson allegedly violated. Responding to Johnson's request for information, Mayo reviewed the charges with Johnson. When Mayo explained the charges regarding the alleged false statement to firearms dealers, Johnson offered that he had not lied on any gun forms; instead, he stated, he had accompanied other individuals into gun stores to be sure that they did not keep the guns, which were intended for yet other individuals.
 
 
 17
 While Johnson was being transported from the United States Magistrate Judge to jail following his initial appearance, a trip lasting approximately five minutes, the Assistant United States Attorney han dling the hearing commented on the number of charges in the indictment in the presence of Mayo and Johnson. The comment was not part of any interrogation, but was a passing comment during a routine prisoner transport. Johnson spontaneously retorted, "[w]ell, this is what crack will get you into."
 
 
 18
 Prior to trial, Johnson moved to suppress all of the statements he made in Agent Mayo's presence. Following a hearing on the matter, the district court denied the motion and ruled that the statements were admissible. Johnson urges that the statements he made to Agent Mayo were the product of interrogation and, therefore, because they were made without the benefit of Miranda warnings, the district court should have suppressed them.
 
 
 19
 In Miranda, the Supreme Court established procedural safeguards to protect a defendant's exercise of his Fifth Amendment privilege from the inherently coercive effect of custodial interrogation. The Court did not preclude the use of all statements made without benefit of advice of rights, however. "The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated." Miranda, 384 U.S. at 478. Thus, the admissibility of Johnson's statement turns on whether they came in response to interrogation.
 
 
 20
 Questions normally attendant to arrest and custody do not constitute interrogation. Rhode Island v. Innis, 446 U.S. 291, 301 (1980); South Dakota v. Neville, 459 U.S. 553, 564 n. 15 (1983). Thus, under this exception, routine booking questions and questions attendant to legitimate police procedures do not require Miranda warnings. Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990). Questions regarding such basic matters as height, weight, age, residence, and other matters do not constitute "custodial interrogation." Id.; see also United States v. Horton, 873 F.2d 180, 181 n. 2 (8th Cir.1989).
 
 
 21
 The statements in question here fall within the exception for routine booking questions. Agent Mayo, who was unfamiliar with the case, simply asked Johnson to verify his name, age, place of birth, social security number, and former address. Mayo requested this information for identification purposes and to ensure that the correct individual had been arrested. Such routine information, which is necessary for basic identification purposes, is not interrogation under Miranda, even if the information turns out to be incriminating. United States v. McLaughlin, 777 F.2d 388, 391 (8th Cir.1985). Accordingly, the district court did not err in ruling those statements admissible despite the fact that they were obtained without benefit of Miranda warnings.
 
 
 22
 Moreover, the statements Johnson made to Mayo and in response to the government attorney's comment regarding the criminal complaint were not in response to interrogation. Rather, they were statements that Johnson spontaneously volunteered. Thus, they do not reflect a "measure of compulsion above and beyond that inherent in custody itself." Innis, 446 U.S. at 300-01. Volunteered statements, like those offered here, "are not barred by the Fifth Amendment and their admissibility is not affected by" the holding in Miranda. Miranda, 384 U.S. at 478. Incriminating statements made without coercion of law enforcement officers simply are not subject to Miranda. United States v. Rhodes, 779 F.2d 1019, 1032 (4th Cir.1985), cert. denied, 476 U.S. 1182 (1986); United States v. Hart, 619 F.2d 325, 326-27 (4th Cir.1980).
 
 
 23
 Furthermore, Johnson's statements to Mayo regarding his participation in unlawful firearms transactions were not induced by any coercion or interrogation by Mayo. Immediately before the statements about the firearms, Mayo was obtaining Johnson's personal history. Johnson initiated the discussion of the charges against him by requesting further information about them. Mayo provided the information. Thus, Johnson's utterances in response to the nature of the charges were not governed by Miranda. See United States v. Crisco, 725 F.2d 1228, 1231 (9th Cir.), cert. denied, 466 U.S. 977 (1984).
 
 
 24
 Finally, the government attorney's small talk during the five minute car ride was not reasonably likely to elicit an incriminating response. Thus, Johnson's statement that "[w]ell, that is what crack will get you into" was an unexpected reply to the attorney's statement. Courts have held that incriminating statements made during casual conversation with law enforcement officials are not the product of interrogation. United States v. Criswell, 696 F.2d 636, 639 (8th Cir. 1983); United States v. Hackley, 636 F.2d 493, 499-500 (D.C.Cir.1980).
 
 
 25
 Accordingly, we find that the district court did not err in ruling Johnson's statements admissible. The statements were made spontaneously and not in response to any interrogation. Accordingly, they are not subject to the strictures of Miranda.
 
 
 26
 Johnson next asserts that the district court denied his request to subpoena a witness. That allegation is not entirely accurate. On the morning of trial, Johnson, who was represented by counsel, interrupted the proceeding and asked the court to issue a subpoena for Johnson's former employer. The district court reminded Johnson that he was represented by counsel, who could ably handle the matter. The court added that the matter was between Johnson and his attorney. Johnson's counsel, however, did not believe that the witness was relevant to Johnson's case.
 
 
 27
 Moreover, Johnson failed to articulate how his former employer would help his case. Johnson suggested that the witness could state where Johnson was during the alleged crimes. Since the only alleged crimes with specific times were the five gun purchases, Johnson must have been referring to them. Johnson admitted that he had been at the gun store on three of the five charged dates. Johnson could not deny his presence on these occasions because his handwriting was on the federal firearms forms for the first two transactions and his fingerprints were recovered from one of the gun boxes from the third transaction. Johnson was also identified by the ATF agents as the person present at the store on a fourth occasion, and later that day when the agents followed him to 1309 West Cary Street and 555 Laburnum Avenue. Accordingly, because Johnson was represented by counsel and because he failed to show the relevance of the requested witness, we find no error by the district court in declining to issue the subpoena in response to Johnson's direct request.
 
 
 28
 Johnson's final contention is that there was insufficient evidence presented at trial to permit a reasonable juror to find that he possessed with the intent to distribute in excess of fifty grams of cocaine base, as charged in Count 14.[2] In reviewing a conviction for sufficiency of the evidence, the verdict should be disturbed only if no rational jury could have found that the prosecution proved the crime charged beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942). We must view the evidence and all reasonable inferences in the light most favorable to the government. United States v. Jones, 735 F.2d 785, 790 (4th Cir.), cert. denied, 469 U.S. 918 (1984).
 
 
 29
 Johnson avers that the only evidence tying him to the 79.45 grams of cocaine base seized from the apartment he rented was the documents found in a safe with the drugs and some similar documents bearing his name in other places in the apartment. In fact, there was substantial evidence linking Johnson with the cocaine.
 
 
 30
 The safe, which contained the cocaine base, contained documents in Johnson's name only. These documents included a receipt for payment on the vehicle Johnson used to obtain firearms on the day of the search as well as documents revealing that he had another residence at 555 Laburnum Avenue. No documents were retrieved from the West Cary Street apartment or safe with names other than Johnson's on them. Therefore, the fact that these documents were found in a safe located in an apartment rented by Johnson established a significant tie between Johnson and the drugs.
 
 
 31
 Moreover, ATF agents observed Johnson retrieving mail from the mailbox at 1309 West Cary Street on June 5, 1991. Further, Fobbs told ATF agents that "Joe" was involved in a drug distribution operation at 1309 West Cary Street. Fobbs testified that Johnson paid Fobbs for the first firearms transaction with cocaine. Another witness, Kevin Ross, testified that he was one of the people involved in the drug distribution at 1309 West Cary Street.
 
 
 32
 A second search of 1309 West Cary Street on June 7, 1991, revealed numerous items indicating that the crack was for distribution. And an expert in the field of cocaine distribution methods testified that 79 grams of cocaine base is consistent with distribution. Finally, and perhaps most damning, Johnson's own testimony tied him undeniably to the cocaine base. Johnson admitted that he was aware that Ross and another person were involved in crack distribution. Johnson testified that the two men paid him in crack to purchase guns. Moreover, Johnson acknowledged that he stated upon arrest that he had friends in Virginia who would give him crack cocaine to test for them. Further, Johnson conceded that he had rented the residence at 1309 West Cary Street and several automobiles for Ross and another individual to use in their drug transactions.
 
 
 33
 Accordingly, Johnson was admittedly aware of and involved in the possession with intent to distribute the cocaine base seized from his apartment on June 5, 1991. Therefore, we find that a rational jury could find him guilty of possession of in excess of fifty grams of cocaine base as charged. Therefore, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Miranda v. Arizona,, 384 U.S. 436 (1966)
 
 
 [2]
 Johnson does not attack his conspiracy conviction in Count 11. Thus, because the sentences for the convictions in Counts 11 and 14 ran concurrently with each other, his sentence would be the same whether the conviction on Count 14 is upheld or not